HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN "BUCK' ORMSBY, an individual, and KENT E. MORRILL, and individual; collectively forming the musical performance group "THE WAILERS,"<br><br>Plaintiffa,<br><br>v.<br><br>ASTON "FAMILY MAN" BARRETT, individually and doing business as THE WAILERS, et al.,<br><br>Defendants. | Case No. CV07 5305 RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## SUMMARY

This matter is before the court on the Defendants' Motion for Summary Judgment [Dkt. #58]. The relevant facts are largely undisputed, and are known to the parties.

Plaintiffs are a musical group known as the "Wailers." They claim to have been performing as such since 1959. They sought to register the name "Wailers" with the United States Patent and Trademark Office ("USPTO") in 1999. Defendants are also a musical group known as the "Wailers." The Defendant Wailers initially opposed that registration, but that opposition was dismissed by the USPTO. The Plaintiffs obtained registration of the Wailers mark in 2003.

Defendants claim, and Plaintiffs do not dispute, that the Defendant Wailers are, or began as, a Jamaican reggae group formed by Bob Marley, Peter Tosh, and others in 1964. Defendant Barrett joined the group in 1969. In 1974, the group became "Bob Marley and the Wailers" and, after Mr. Marley died in 1981, the band performed as "the Bob Marley Wailers," and subsequently the "Wailers."

Each group has been performing continuously until the present time, Defendant Barrett registered the internet domain name "wailers.com" in 1998, but none of the Defendants has ever sought to register the mark with the USPTO.

Plaintiffs sued in 2007, claiming that Defendants' use of the Wailers name amounted to trademark infringement and unfair competition under the Lanham Act (15 U.S.C. 1114(1) and 1125(a)); constituted dilution of the mark under the Federal Trademark Dilution Act (15 U.S.C. 1125(c)); violated the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. 1125(d)); and constituted common law unfair competition. They seek consequential and punitive damages, as well as injunctive relief.

Defendants seek summary dismissal of each claim, arguing that Plaintiffs' claims are barred by laches, given the length of time they waited to bring this suit, after knowing of the Defendant Wailers use of that name. Specifically, they argue that the Plaintiffs admit they knew a group known as the Wailers was performing as early as the 1970s, when a fan of the Plaintiff Morrill asked if his group "backed up Bob Marley." [See Dkt. #59; Ex. A]. Plaintiff Ormsby had a similar experience in the same time frame. [See Dkt. #59; Ex. B]

Defendants point to other events in the 1980s and 1990s, including Defendant Barrett's Registration of the domain name "wailers.com" in 1998, as evidence the Plaintiffs knew of, and did not act upon, the alleged infringement for many years prior to their suit. Defendants point out that Plaintiffs base all of their infringement and related claims on their 2003 registration of the Wailers mark, and argue that registration does not "trump" prior lawful use of a mark.

Plaintiffs disagree, and argue that Defendants cannot successfully assert a laches defense where there is evidence their infringement was wilful; that laches should not be applied where the encroachment was progressive over time. They rely heavily, if not exclusively, on the fact of their 2003 registration, and emphasize the summary judgment standard. Plaintiffs claim there are issues of fact that cannot be resolved in Defendants' favor in this context.

For the reasons discussed below, the Defendants' Motion is GRANTED, and Plaintiffs' claims against them are DISMISSED.

**DISCUSSION**

**Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**1. Laches**.

The thrust of Defendants' argument is that Plaintiffs' claims are barred by laches, as they have known of Defendants' alleged infringement since the 1970s and failed to bring this suit until 2007. They assert that the application of laches is a question of law. The parties apparently agree that the Ninth Circuit's holdings on the applicability of laches are outlined in *Jarrow Formulas v. Nutrition Now. Inc.*, 304 F.3d 829 (9th Cir. 2002) and *Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102 (9th Cir. 2006).

The *Jarrow Formulas* court explained that the application of laches is determined in large measure with reference to the analogous state law limitations period:

> Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that "one who seeks the help of a court of equity must not sleep on his rights." It is well established that laches is a valid defense to Lanham Act claims[.] We hold that the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period. To hold otherwise would "effectively swallow the rule of laches, and render it a spineless defense."
>
> * * *
>
> [W]e presume that laches is not a bar to suit if the plaintiff files within the limitations period

> for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though part of the defendant's conduct occurred within the limitations period. Further, the state limitations period runs from the time the plaintiff knew or should have known about his [] cause of action.

*Id.* at 835-836.

The Defendants argue that the closest state law analogy to Plaintiffs' trademark infringement claims is Washington's common law tort of trade name infringement, which has a three year limitations period. *See* RCW 4.16.080(20). Plaintiffs do not strenuously dispute this allegation, but instead explain why their delay should not result in the application of laches.

Defendants stress that Plaintiffs were aware Defendants were calling themselves the "Wailers" since the mid to late 1970s, when they were asked about their relationship to Bob Marley. Plaintiffs argue, without legal or logical support, that there is some meaningful difference between the names "Wailers" (standing alone) and "Wailers" in the context of "Bob Marley and the Wailers." They claim their 1970s-vintage knowledge of Defendants' use of the term was only in conjunction with Mr. Marley, and that that use was not offending.

In making this argument, however, Plaintiffs also concede that they "first encountered the Defendants' band name as simply the "Wailers" at some point in the late 1990s," and that they were unaware the Defendants were calling their group the "Wailers" until the late 1990s." [Dkt. # 61 Plaintiffs' Response at 10, 11].

As the Defendants point out, however, the Plaintiffs' registration efforts do not eliminate the rights of the Defendants: Neither application for nor registration of a mark at the federal level wipes out the prior, non-registered, common law rights of others. 2 J. McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 16.1 (4th Ed. 2007); *see* Reply at 1. Accordingly, the act of applying for registration does not toll the limitations period, and the Plaintiffs' 2007 lawsuit to enforce the rights they claim to have obtained by registration is outside the three year limitations period. The presumption of laches applies. *See*

ORDER
Page - 4

*Jarrow Formulas,* and *Tillamook, supra*.

The question then becomes whether the Plaintiffs have, or can, overcome this presumption.

**2.     Wilfulness of Defendants' infringement.**

Plaintiffs argue that the tardiness of their suit should be overlooked on a number of bases. The first is their claim that the Defendants' infringement of their mark was wilful. They argue that there is a "deliberate piracy" exception to the laches doctrine in the Ninth Circuit.

While this may be correct, the Plaintiffs have produced no evidence of such wilfulness here. Plaintiffs rely on the fact that the Defendants opposed the Plaintiffs' registration, and that opposition was dismissed with prejudice. [-Response at 6.] However, the Plaintiffs admit, as they must, that the Defendants' use of the mark predates by a number of years the plaintiffs' application and registration of the mark.

The Plaintiffs' argument on this issue depends on the validity of their claim that the registration bestowed upon them rights superior to the Defendants, notwithstanding the Defendants' prior use of the mark. Indeed, all of Plaintiffs' arguments rely on this position. As is discussed above, this position is simply incorrect. The deliberate piracy exception is not applicable to defeat the application of laches to Plaintiffs' claims.

**3.     Defendants' progressive encroachment.**

Plaintiffs also make a related argument that their delay in bringing the suit was not unreasonable because the Defendants "progressively encroached" on their mark, and that this to is a basis for avoiding the presumption that laches applies. This argument is based on the Plaintiffs' "information and belief" that the Defendants use of the mark[1] was "de minimus" until the late 1990s. There is no evidence supporting this

---

[1] This claim is also belied by the Plaintiffs' own admission that they knew of the Defendants' use of the name Wailers in connection with Bob Marley thirty years ago. There is no evidence of increased use in the relevant time frame.

ORDER
Page - 5

belief, and Plaintiffs naked claim that the Defendants' use of the mark increased progressively after the Plaintiffs' registration is insufficient.

**4.     Prejudice to Defendants.**

Plaintiffs correctly argue that laches cannot apply in the absence of prejudice to the Defendants if their tardy suit is permitted to go forward. However, "a defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights." *See Grupo Gigante SA de CV v. Dallo & Co., Inc.,* 391 F.3d 1088 (9th Cir. 2004), *citing* McCarthy, *supra* at §32:12.

Defendants have demonstrated, and Plaintiffs do not dispute, that they have continued to perform as the Wailers here and abroad since the Plaintiffs sought to register their mark, and since June of 2004 (three years prior to the suit).

Plaintiffs argue that the loss of the goodwill earned by Defendants in this period would not constitute "prejudice" because it was done at their own peril, in light of their knowledge of Plaintiffs claim. This is but a restatement of Plaintiffs' mistaken claim that their registration trumped Defendants' years of prior use of the mark "Wailers."

Defendants have demonstrated that they would be prejudiced if laches did not apply.

The presumption of laches has not been overcome as a matter of law, and Plaintiffs' Lanham Act claims – all subject to the analogous three year limitations period under state law – must be dismissed as untimely.

**5.     The same result is reached under E-Systems.**

Defendants also argue in the alternative that Plaintiffs are guilty of laches under the six part test articulated in *E-Systems, Inc. v. Monitek, Inc.*, 720 F2d 604 (9th Cir. 1993) (cited by *Tillamook*, supra). Plaintiffs argue that under that test, laches should not apply. The court is not entirely convinced that this test is in fact a separate test. Nevertheless, the result would be the same, and the application of the six factors

ORDER
Page - 6

need not be discussed in depth.

**6.     Plaintiffs' Anti- Cybersquatting Consumer Protection Act Claim and Defendants' bad faith.**

Defendants also seek summary judgment on Plaintiffs Cybersquatting claim. This claim is based on Defendant Barrett's registration of the domain name "wailers.com" in 1998 (prior to Plaintiffs' application for trademark registration). They claim that the registration was in bad faith and that it deprived them of the opportunity to conduct business on the internet.

The Plaintiffs concede that the success of the claim depends on a determination that the registration was done in bad faith and that that determination can, on undisputed facts, be made as a matter of law. They argue that the facts regarding Defendants' bad faith are disputed here, and that Defendants Motion on this claim must be denied.

The existence of bad faith is unique to the facts of each case, and the statute and the cases interpreting it outline a number of factors for the court to consider in making the determination. As the Defendants point out, however, there is also a "safe harbor" for registrants: Bad faith shall not be found in any case in which the court determines that the person is believe and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful. *See* 15 U.S.C. §1125(d)(1)(B)(ii).

Defendants argue that Barrett's longstanding use of the name Wailers establishes his "abundant good faith" in registering the domain name. Plaintiffs argue that the issue is one of fact, and that they have not conducted discovery into the matter.

No amount of discovery is going to change the fact that Defendants have been calling themselves the Wailers for decades, the Plaintiffs knew it, and the domain name registration predated the Plaintiffs' application for trademark registration. There is no evidence of bad faith on the Defendant's part, and the Plaintiffs' Cybersquatting claim must fail as a matter of law.

For these reasons, Defendants' Motion for Summary Judgment [Dkt. #58] is GRANTED and

1  Plaintiffs' claims are DISMISSED.

2  IT IS SO ORDERED.

3
4       Dated this 2nd day of January, 2008.

5
6
7                                    _____
                                     RONALD B. LEIGHTON
8                                    UNITED STATES DISTRICT JUDGE

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28